UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

Case Number 19-20004
Honorable David M. Lawson

NOE FLORES-PEREZ,

Defendant.
_________________________________________/

**OPINION AND ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS INDICTMENT**

Defendant Noe Flores-Perez, charged with illegally reentering the United States after having been deported, has filed two motions to dismiss the single-count indictment. Both motions focus on the validity of the notice to appear that was issued to him when he was found in this country in 2001, and the ensuing removal proceedings, which were conducted without his presence. In the first motion, he argues that the removal proceedings were void from the beginning because the notice to appear did not contain a time or place for the removal hearing, and therefore the immigration court had no jurisdiction to order his removal, nullifying the removal order, which is an essential element of the crime charged in the indictment. In the second motion, filed after Flores-Perez received a more complete record of the immigration proceedings, he contends that the removal proceedings were fundamentally unfair because the immigration officials mailed the notification of the hearing time and place to him at an incorrect address, albeit one that was listed on the original notice to appear. Since he never received notice of the hearing, he reasons, he was deprived of the chance for voluntary departure. The Court heard arguments on both motions, the latter on May 16, 2019, where the defendant stated that he continued to press his jurisdictional argument, despite recent Sixth Circuit precedent that settled the issue against him. However, the

second motion must be denied for the same reasons as the first, mainly because the defendant has not shown that he exhausted available administrative remedies to challenge the *in absentia* order of removal, and he has not shown that he was prejudiced by any procedural defect in the removal proceeding.

I.

Defendant Noe Flores-Perez is a citizen of Mexico who entered the United States illegally sometime before 2001. On December 19, 2001, immigration agents found him in Michigan and served him with a "notice to appear," which stated that he would be subjected to a removal hearing at a date and time to be determined. On January 22, 2003, after a hearing at which Flores-Perez did not appear, an immigration judge issued an order of removal. In March 2009, he again was arrested in the United States, and on March 31, 2009 he was deported.

At some point he returned to America, and, on December 12, 2018, he was arrested again in Michigan. On January 3, 2019, he was charged in a single-count indictment with unlawfully reentering the United States after having been removed, contrary to 8 U.S.C. § 1326(a). On January 31, 2019, he filed a first motion to dismiss the indictment for failure to state an offense. After the first motion was argued and certain questions were raised about the factual basis for the defendant's position, the defendant filed a second motion to dismiss the indictment, and the government filed a response, which included as an exhibit the entire unredacted immigration agency case file for the defendant's removal proceedings. The now complete record of the removal proceedings reveals the following additional and apparently undisputed facts.

In the original notice to appear, which was hand delivered to the defendant and signed by him, the defendant's address was recorded with the proper street number, but with an apartment number that does not exist. The defendant submitted a partial copy of that notice to appear as an

exhibit to his motion. However, the partial copy that the defendant submitted omitted the second page, which bears both the defendant's signature and the direction that the defendant was "required to provide the INS, in writing, with [his] full mailing address and telephone number," and that "[n]otices of hearing will be mailed to this address."

The defendant attested in an affidavit that he provided his identification to the arresting agents, but none of them spoke Spanish, and no interpreter was present. During his brief two-hour detention, Flores-Perez received a copy of the notice of hearing, but it was written in English, and nobody told him to check the address imprinted thereon to make sure that it was correct. The defendant resided in apartment 311 at 1231 Colony Lane, not apartment 132 as the notice recorded. Before he was released, a woman who spoke Spanish talked with the defendant and told him a notice of hearing with a date and time would be mailed to him. However, because the wrong address was recorded in the immigration file, the defendant never received any notice of the hearing, so he did not know when to appear. The defendant had no further contact with immigration authorities until he was arrested and deported in March 2009. The defendant asserts that, if he had known the date and time of the original immigration proceeding, he "would have requested voluntary departure so that [he] would not be barred from returning to the country for 10 years."

II.

Flores-Perez brought both motions to dismiss under Federal Rule of Criminal Procedure 12, which allows any party to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). He cites Rule 12(b)(3)(B), which allows a defendant to move before trial to dismiss an indictment or any count of it that "fail[s] to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v).

"'[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *United States v. Anderson*, 605 F.3d 404, 411 (6th Cir. 2010) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)). Where the information "clearly track[s] the language of the statute," it sufficiently "contain[s] the elements of the offense." *Ibid.* Where the charging language includes "the relevant time period and the specific event that triggered the charge," the defendant will "accordingly be able to adequately plead an acquittal or conviction in bar of any future prosecutions arising from the same offense," and the second requirement under *Hamling* will be met. *Ibid.*

Because Rule 12(b) limits pretrial motions only to those matters that can be decided "without a trial on the merits," Fed. R. Crim. P. 12(b)(1), "courts [considering] motions to dismiss [an indictment for failure to state an offense] do not evaluate the evidence upon which the indictment is based." *United States v. Landham*, 251 F.3d 1072, 1080 (6th Cir. 2001) (citing *Costello v. United States*, 350 U.S. 359, 362-63 (1956); *United States v. Powell*, 823 F.2d 996, 999-1001 (6th Cir. 1987); *United States v. Markey*, 693 F.2d 594, 596 (6th Cir. 1982)).

A.

The elements of the offense of illegal reentry under 8 U.S.C. § 1326(a) are that the defendant is an alien, he was denied admission or was deported or removed from the United States under an order of removal, and he attempted to reenter the United States without the express permission of the Attorney General or the Homeland Security Secretary. *United States v. Hodulik*, 44 F. App'x 656, 660 (6th Cir. 2002) (citing *United States v. Meza–Soria,* 935 F.2d 166, 168 (9th Cir. 1991)); *see also* 8 U.S.C. § 1326(a). A defendant may mount a collateral attack on a

deportation order where, as here, the order is necessary to establish an element of the offense. *United States v. Mendoza-Lopez*, 481 U.S. 828, 837-37 (1987).

In his opening motion brief, the defendant argues that the order of removal is "void *ab initio*" because the omission of the date and time of the hearing, as required by 8 U.S.C. § 1229(a)(1)(G)(i), means that jurisdiction never vested in the immigration court. The defendant acknowledges the hurdles to collateral attacks on an order of removal in a subsequent criminal proceeding interposed by 8 U.S.C. § 1326(d), but he contends that he is not subject to those constraints because, due to the jurisdictional defect, "the order of removal . . . has no[] legal effect," and, thus, the defendant "is not actually collaterally attacking a removal order." In a reply brief, the defendant acknowledges the recently issued published decision in *Santos-Santos v. Barr*, 917 F.3d 486 (6th Cir. 2019), which rejected the position he now advances, but he contends that the *Santos-Santos* decision "does 'not establish binding precedent' because critical issues were never 'brought to the attention of the court.'" Def. Reply, ECF No. 32, PageID.153 (quoting *United States v. Lucido*, 612 F.3d 871, 876-77 (6th Cir. 2010)).

However, in the context of a subsequent criminal prosecution, "[a] defendant charged with unlawful reentry may not challenge the validity of his deportation order unless he demonstrates that: '(1) [he] exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived [him] of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair.'" *United States v. Estrada*, 876 F.3d 885, 887 (6th Cir. 2017) (quoting 8 U.S.C. § 1326(d)). "Because the requirements are conjunctive, the alien must satisfy all three prongs." *Ibid.*

In *Santos-Santos v. Barr*, the Sixth Circuit considered at some length the jurisdictional arguments advanced by the defendant here, and it concluded that the omission of a date and time for the removal hearing in a "notice to appear" that was filed as the initial charging document in an immigration case did not deprive the immigration court of jurisdiction. The court acknowledged that the Supreme Court in *Pereira v. Sessions*, --- U.S. ---, 138 S. Ct. 2015 (2018), addressed a similar issue of the invalidity of a notice to appear that omitted the time and place of a hearing. But it distinguished that case because it did not deal with the statutory provisions "distinct from the regulations at issue here." *Santos-Santos*, 917 F.3d at 489. The court first noted that jurisdiction vests with the immigration court when a notice to appear containing the required information is sent to the respondent, even if the initial document omits that information. *Id.* at 490 (citing *Hernandez-Perez v. Whitaker*, 911 F.3d 305, 314-15 (6th Cir. 2018)).

The court also held that Congress authorized the Attorney General to promulgate regulations governing removal hearings, and those regulations include a definition of the requisites of a notice to appear that differs from the statutory definition found in 8 U.S.C. § 1229(a)(1), which was the focus of the Supreme Court in *Pereira*. *Ibid.* The court noted that the regulations state that "'[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the [INS].'" *Ibid.* (quoting 8 C.F.R. § 1003.14). A charging document includes a notice to appear. But "[t]he regulation does not cross-reference 8 U.S.C. § 1229(a)(1)'s definition of a written 'notice to appear.' Instead, the regulations stipulate that an NTA, for purposes of vesting jurisdiction, must contain" a specific list of information, not including that time and place of the hearing. *Ibid.* And even if that information were required on the notice, "[f]ailure to include this information . . . 'shall not be construed as affording the alien any substantive or procedural rights.'" *Ibid.* (quoting 8 C.F.R. § 1003.15(c)).

The court held that "[n]o references to the time and place of the hearing are required to vest jurisdiction under the regulation." *Ibid.*; *see also Karingithi v. Whitaker*, 913 F.3d 1158, 1159-62 (9th Cir. 2019) ("The regulatory definition, not the one set forth in § 1229(a), governs the Immigration Court's jurisdiction. A notice to appear need not include time and date information to satisfy this standard. [The petitioner's] notice to appear met the regulatory requirements and therefore vested jurisdiction in the IJ.").

As the court of appeals observed, despite the use of the same descriptive moniker, "notice to appear," the statute and regulations are distinct in their implications:

> It bears mentioning that the "Notice to Appear" in 8 C.F.R. §§ 1003.13-14 is different from the "Notice to Appear" in 8 U.S.C. § 1229(a)(1). Unlike a Notice to Appear in 8 U.S.C. § 1229(a)(G)(i), which requires that the "time and place at which the proceedings will be held" be included in the notice, the Notice to Appear under 8 C.F.R. § 1003.15 does not have this requirement. Although the contents of the two documents might be different, this does not mean that the regulation contradicts the statute. *Nothing in 8 U.S.C. § 1229 or elsewhere in the code requires the Notice to Appear specified in § 1229(a)(1) to commence immigration proceedings and vest jurisdiction with the IJ.*

*Santos-Santos*, 917 F.3d at 490 n.4 (emphasis added).

The defendant has not mounted any challenge to the facial sufficiency of the indictment, and there is at least a question of fact about whether proper notice was given and whether there was even any cognizable defect in the removal proceeding. That question is addressed by his second motion, discussed below.

More to the point, the defendant's challenge to the basis of the immigration court's jurisdiction is foreclosed by controlling circuit law. The *Santos-Santos* court rejected the same arguments advanced by the defendant here, and it did so in a published decision. The defendant contends that *Santos-Santos* was wrongly decided for assorted reasons, but it remains binding precedent that this Court must follow until it is overturned either by the Supreme Court or a decision of the Sixth Circuit sitting *en banc*. *Rutherford v. Columbia Gas*, 575 F.3d 616, 619 (6th

Cir. 2009) ("A published prior panel decision 'remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting *en banc* overrules the prior decision.'" (quoting *Salmi v. Secretary of Health & Human Services*, 774 F.2d 685, 689 (6th Cir. 1985)). Regardless of any supposed defect in the decision, until it is overruled by contrary controlling law, *Santos* is the law of the circuit and binding on this Court. Moreover, the Sixth Circuit did not stand alone in reaching this conclusion; the weight of authority among courts that have considered *Pereira*-based challenges in criminal unlawful reentry cases tilts heavily toward finding no merit in the defendant's position. *United States v. Gomez-Salinas*, No. 19-10, 2019 WL 1141063, at *4 n.5. (E.D. Va. Mar. 12, 2019) (citing *United States v. Lozano*, 355 F. Supp. 3d 554 (S.D. Tex. 2019) (collecting cases)).

Finally, the defendant has failed to show that he satisfies the criteria for mounting a collateral attack on the order of removal under 8 U.S.C. § 1326(d), because he does not even assert that he exhausted available administrative remedies or that he was deprived of any meaningful opportunity for judicial review of his removal. He argues only that his removal was "fundamentally unfair" because he never was advised about the availability of discretionary relief that he could have pursued such as voluntary departure. But the Sixth Circuit has held that an alien has no right recognized by the Due Process Clause to be advised about the availability of, or to receive, such discretionary relief. *Estrada*, 876 F.3d at 888 ("We acknowledge the circuit split on this question, with the majority of our sister circuits likewise holding that an alien has no constitutional right to be informed of eligibility for, or to be considered for, discretionary relief. Estrada asks us to eschew [the majority rule] and follow the Second and Ninth Circuits' approaches. We decline the invitation."). Because the defendant has not met all of the three criteria under section 1326(d), he cannot prevail in a collateral attack on the removal order. *Id.* at 889

(“Because we hold that Estrada has not established a due process violation, we perceive no fundamental unfairness in the entry of his underlying deportation order. Accordingly, we need not decide whether he exhausted all available administrative remedies, 8 U.S.C. § 1326(d)(1), or whether his deportation proceedings improperly deprived him of judicial review, *id.* § 1326(d)(2).”).

B.

In his second motion, the defendant argues that (1) the 2001 removal proceeding “deprived him of his ability to pursue administrative and judicial relief” and was fundamentally unfair because he never received notice of the hearing and thus was unable to appear, and (2) he was prejudiced by the deprivation of process because had he known when to attend the hearing he would have requested voluntary departure, and there is a reasonable probability that it would have been granted. Neither of these arguments can prevail here for several reasons.

First, the defendant concedes that he never pursued any available administrative or judicial remedies to attempt to challenge the removal order, and that he never has made any attempt within the past 18 years to reopen the removal proceedings. Contrary to the defendant’s position, the Sixth Circuit has not recognized any circumstances in which the exhaustion requirement is excused due to an alleged procedural defect in the removal proceedings, and it is settled law in this circuit that “[b]ecause the requirements are *conjunctive*, the alien *must satisfy all three prongs*” of the section 1326(d) standard. *Estrada*, 876 F.3d at 887; *see also id.* at 889.

The defendant switches gears in his reply brief, where he contends that he does not mean to argue that the exhaustion requirement of section 1326(d) is “excused” by the lack of notice, and instead argues that he has “satisfied” the exhaustion requirement because, as a result of the deprivation of notice, no administrative remedies were “available” to him, since, as a result of his

absence from the hearing, no immigration authority ever advised him of his right to appeal the removal order. But, regardless of whether he was informed about any available remedies by the immigration authorities, individuals subject to removal proceedings "are presumed capable of researching generally available remedies" to challenge a removal decision. *United States v. Alegria-Saldana*, 750 F.3d 638, 641 (7th Cir. 2014). And the defendant has not suggested that he did anything at all either to inquire about the status of his removal proceeding or to contest the initial order of removal, over the lapse of nearly two decades since his initial detention, even though he plainly admits that he was informed that a removal hearing would be held, and, moreover, he certainly was aware of the 2003 removal order when the government relied upon it to remove him again in 2009, more than a decade before his most recent unlawful reentry arrest in 2019. *United States v. Roque-Espinoza*, 338 F.3d 724, 729 (7th Cir. 2003) ("The fact that [the defendant] chose not to make the attempt [to pursue administrative or judicial remedies] does not mean that he was deprived of all avenues of judicial review of his removal order.").

Second, the defendant has not established that the failure to provide written notice of the removal hearing rendered the proceeding fundamentally unfair, because it is undisputed that the defendant never provided the immigration authorities with his correct mailing address for the notice delivery, as he was directed to do in the written notice that personally was given to him when he initially was detained. The defendant principally cites *United States v. El Shami*, 434 F.3d 659 (4th Cir. 2005), for the proposition that a removal proceeding is "fundamentally unfair" where the defendant never received written notice of the removal hearing. But that case readily is distinguishable because there the defendant provided notice of his correct mailing address to the INS, and it was undisputed that he resided at that address during the entire pendency of the removal proceeding, but the government conceded that there was no indication in the immigration file that

any written notice ever was mailed to him at that address, as was required by then applicable immigration regulations. *Id.* at 663-64 ("The undisputed evidence indicates that El Shami lived at the address of record that he provided to immigration officials after his release on bond pending the show cause hearing on March 30, 1993, until he was deported in August 1994. Under the law as it stood in 1993, the INS was required to serve upon the alien or his attorney in person, or, if service was impracticable, send by certified mail, written notice informing the alien, *inter alia*, of the time and date of the deportation hearing. 8 U.S.C. § 1252b(a)(2) (1993). Both El Shami and his wife testified that they did not receive any correspondence from the INS regarding the final deportation hearing during the period of April through October 1993. Further, during the pendency of this matter in the district court, the United States stipulated that there was no evidence in El Shami's immigration file to reflect that the INS had sent El Shami written notice of the final deportation hearing.").

The defendant points to *United States v. Ramos-Delcid*, No. 3:18-CR-00020, 2018 WL 5833081 (W.D. Va. Nov. 7, 2018), where the court granted relief to a defendant facing an unlawful reentry charge based on an *in abstentia* removal order entered after a notice to appear was sent to a wrong address. But that case likewise is distinguishable, because the court found that the defendant exhausted his administrative remedies before collaterally attacking the removal order in court. *Id.* at *6. ("Ramos-Delcid readily satisfies the first two prongs of § 1326(d), which require a showing that "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order" and "(2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review."). That finding was based on Fourth Circuit precedent, *El Shami*, which held that failure to send any notice to appear "'precluded [the defendant] from attending his deportation hearing in the first instance,' [so that] the defendant

was never 'apprised of his right to seek . . . administrative and judicial review,' and thus 'satisfies the first two requirements for a collateral attack under § 1326(d).'" *Id.* at *6 (quoting *El Shami*, 434 F.3d at 664). But Sixth Circuit precedent stands in the way of adopting that reasoning.

In *Thompson v. Lynch*, 788 F.3d 638 (6th Cir. 2015), the Sixth Circuit held that no due process defect is established where the individual facing removal failed to provide immigration authorities with his correct mailing address in the first instance, regardless of the fact that the initial error in transcribing the person's address was made by the authorities themselves. *Id.* at 648 ("Thompson signed the Notice to Appear that listed 2761 East 126 Street as his mailing address, and he did not subsequently notify the government of a correct [or] changed address. By mailing a hearing notification to that address, the government fully satisfied its obligation to provide Thompson with notice of the hearing against him. Whether or not Thompson was actually aware of the immigration official's error on the Notice to Appear, the law charges him with the knowledge of that error, which he was obligated to correct under 8 C.F.R. § 1003.15(d)(1)." (quoting 8 U.S.C. § 1229(c) ("Service by mail . . . shall be sufficient if there is proof of attempted delivery to the last address provided by the alien.")); *see also id.* at 647 ("The fact that the immigration official made the alleged error does not absolve Thompson. Thompson had both the opportunity to provide his current, correct address at the time he received the Notice to Appear and the obligation to ensure that the INS had an address at which he could be reached throughout the proceedings. This obligation necessarily included a duty to correct the address listed on the Notice to Appear, particularly since the Notice to Appear informed him that all future mailings would be sent to the address listed on the form.").

In this case, it is undisputed that the defendant never provided any notice of his correct mailing address to the INS, as the directions on the notice to appear stated that he must. And the

undisputed record evidence shows that the authorities did attempt to mail a notice of the hearing to the address that was on the initial notice to appear, with which the defendant personally was served, and which he signed. The defendant asserts that he did not understand that the authorities had recorded his mailing address incorrectly, but the Sixth Circuit has held that an individual subject to removal proceedings is "required to comply with 8 C.F.R. § 1003.15(d)(1) [requiring an individual to notify immigration authorities of his correct mailing address] regardless of his knowledge thereof." *Thompson*, 788 F.3d at 647.

Moreover, where an individual signs a notice to appear stating that he is required to provide his address, there is a strong presumption that he understands the content of that notice. *Ibid.* ("As this and other courts have noted in various contexts, including immigration cases, one's signature on a form . . . establishes a strong presumption that [he] [knows] its contents and . . . assent[s] to them.'" *Thompson*, 788 F.3d at 647 (quoting *Haskins v. Prudential Ins. Co. of Am.*, 230 F.3d 231, 239 (6th Cir. 2000)). The defendant's assertions that the detention proceedings were "confusing" because the arresting officers did not speak English and the notice form was written in English are not sufficient to overcome that presumption, particularly where he affirmatively attested that he was given the opportunity to speak to someone who did speak Spanish before he was released, whom he presumably could have questioned about the form, and whom he could have questioned to confirm that authorities had his correct address, which would have been a reasonable inquiry when the person informed him that a notice of hearing would be mailed to him. Flores-Perez aff. ¶ 10, PageID.313.

In addition, the defendant does not attest that he was entirely unable to understand the notice that undisputedly was given to him. He asserts in his affidavit that he (presently) "can read English" and that he understands all of the English statements presented in his declaration. Flores-

Perez aff. ¶ 1, ECF No. 43-2, PageID.311. He also asserts that, when he first was detained in 2001, he "did not speak English," and that he "did not understand English well." *Id.* ¶¶ 7, 10, PageID.312-13. But he conspicuously does *not* assert that he was incapable of comprehending either the written directions to provide his mailing address to the INS, or the recorded address shown on the form as his residence, which was incorrect. Moreover, the defendant states that he provided his driver license to the immigration officers, which he evidently understood at the time did contain his correct (written) address information. *Id.* ¶ 9. Under those circumstances, and assuming the likelihood that the petitioner had the opportunity to review the notice to appear form on the spot, which the defendant says was provided to him by a Spanish speaker, the defendant has not rebutted the strong presumption that he had notice of its contents.

Third, even if the removal was procedurally defective, the defendant has not established prejudice. The defendant contends that he was prejudiced because he never was advised about the availability of discretionary relief that he could have pursued such as seeking voluntary departure. But, as noted above, the Sixth Circuit has held that an alien has no right to be advised about the availability of, or to receive, such discretionary relief. *Estrada*, 876 F.3d at 888. Therefore, even if the defendant has established that the removal was procedurally defective, he has not satisfied the second requirement of the fundamental unfairness inquiry, because he has not shown that he was prejudiced by the lack of notice, since he had no due process-protected interest in receiving the discretionary relief of voluntary departure.

III.

The defendant has not established a proper basis to collaterally attack the removal order that provides one of the elements of the crime for which he is charged. He has not shown that the court lacks jurisdiction to try him, or that the indictment fails to state an offense.

Accordingly, it is **ORDERED** that the defendant's motions to dismiss the indictment (ECF No. 20, 43) are **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Date: July 8, 2019

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on July 8, 2019.

s/Susan K. Pinkowski
SUSAN K. PINKOWSKI